doubt that under powers granted by Article 1175, Revised Statutes, a city such as Corpus Christi may require the owners of motor vehicles operated for hire on the city's streets to post bond or other assurance for the payment of losses proximately resulting from the negligence of themselves or their agents. Greene v. City of San Antonio, Tex.Civ.App., 178 S.W. 6, writ refused; City of Dallas v. Gill, Tex. Civ.App., 199 S.W. 1144, writ refused; Ex parte Parr, 82 Tex.Cr.R. 525, 200 S.W. 404; Ex parte Schutte, 118 Tex.Cr.R. 182, 42 S.W.2d 252; Fletcher v. Bordelon, Tex. Civ.App., 56 S.W.2d 313, writ refused; Dallas Taxicab Co. v. City of Dallas, Tex. Civ.App., 68 S.W.2d 359. But the ordinance under consideration goes further and requires the posting of an indemnity policy or other assurance to protect the public against the negligence of drivers to whom respondents might rent their machines. The validity of this provision is vigorously assailed. It is ably argued that the measure contravenes Article 1, Revised Statutes, which puts into force the common law of England in so far as it is not inconsistent with the constitution and laws of this State. The point is made that only the legislature is authorized to change the common law and since no statute has undertaken to make one liable for the torts of another who is not his agent, a city may not so provide.

The city cites respectable authority to the effect that by delegating to municipalities the power to control their streets and to license persons doing business on them for a profit, the legislature has in effect repealed so much of the common law as is inconsistent with any reasonable regulations the cities may make under this power. City of Dallas v. Gill, supra; Fletcher v. Bordelon, supra. But this principle need not be invoked here, since the questioned ordinance has not at all undertaken to enlarge the common law liability of the owners of rented automobiles. No provision of the measure undertakes to fix upon the lessors personal liability for the torts of their lessees. What the ordinance does require is that lessors such as respondents who do business upon the streets of the city for a profit give security that their lessees shall respond in damages for the latter's torts. This requirement is a reasonable one. Its promulgation by ordinance has been approved by many writers. Greene v. City of San Antonio, supra; Ex

parte Parr, supra; Ex parte Schutte, supra; Fletcher v. Bordelon, supra; Dallas Taxicab Co. v. City of Dallas, supra; Peoples Taxicab Co. v. City of Wichita, 140 Kan. 129, 34 P.2d 545, 95 A.L.R. 1218, and note at 1224; State v. Healy, 105 Mont. 227, 70 P.2d 437; Hodge Drive-It-Yourself Co. v. City of Cincinnati, 284 U.S. 335, 52 S.Ct. 144, 76 L.Ed. 323. Also see Parsons v. City of Galveston, 125 Tex. 568, 84 S.W.2d 996. We conclude that the measure does not offend against the principle asserted by respondents to the effect that a municipality may not, unless pursuant to statutory or constitutional authority, change the provisions of the common law. In reaching a contrary conclusion, the Court of Civil Appeals cited Genusa v. City of Houston, Tex.Civ.App., 10 S.W.2d 772, which supports respondents' contention. For the reasons we have stated we are unable to subscribe to the correctness of that holding.

That portion of the judgment of the Court of Civil Appeals which restrains the city from requiring the deposit of indemnity policies or securities in lieu of the policies, as provided in Section 10 of the ordinance involved, is reversed. Otherwise its judgment is affirmed.

**Ex parte HOLDEN.**
**No. A–702.**

Supreme Court of Texas.
Nov. 21, 1945.

Milton K. Norton and J. E. McLemore, Jr., both of Dallas, for relator.

No appearence by any respondent.

HICKMAN, Justice.

This is an original habeas corpus proceeding in this court in which Harold Holden seeks release from an order of a special judge of one of the district courts of Dallas County adjudging him to be in contempt of that court. The punishment assessed was a fine of $100 and three days in jail, the maximum allowed by law. Art. 1911, R.S.1925. By order of this court heretofore entered relator was released from the custody of the Sheriff of Dallas County pending a hearing of this proceeding by this court on its merits.

The contempt order was based upon a finding that relator violated a previous order of the court requiring him to pay $35 per week into the registry of the court for the support and maintenance of his wife during the pendency of an action for divorce instituted by her against him. Relator's verified petition in this court is not controverted. One of the grounds upon which he attacks the legality of the contempt order is that upon the hearing he was denied the right to testify as to why he had not complied with the order requiring him to pay alimony. In support of this ground he has caused a statement of facts in the contempt hearing to be filed here and it discloses that while relator was on the witness stand for the purpose of testifying in his own defense his attorney asked him for what reason he had not paid the $35 per week. To this inquiry counsel for Mrs. Holden objected on the ground that it was immaterial and irrelevant why he had not paid it. The objection was sustained and relator was denied the right to state why he had not complied with the court's order.

There is thus presented for decision the question of whether or not due process has been accorded a party charged with contempt committed outside the presence of the court by disobedience of a previous order of the court when he has been denied

the right to testify as a witness at the contempt hearing, in defense of the charge or mitigation of the punishment, concerning the reason why he disobeyed the order. That is not a difficult question. It was held in Ex parte Ratliff, 117 Tex. 325, 3 S.W. 2d 406, 408, 57 A.L.R. 541, that due process, as guaranteed by Amendment 5 of the United States Constitution, and Art. 1, Sec. 19, of the Texas Constitution, Vernon's Ann.St., "* * * requires that one charged with contempt be accorded the opportunity not only to establish a complete defense, but to offer evidence and argument in extenuation of his offense and in mitigation of the penalty." That principle governs this case. To deny an accused the right to inform the court why he had not complied with its order is, in effect, to deny him a trial. That is not due process.

Other grounds are relied on by relator, but since full relief must be granted him on the ground just discussed, no reason is perceived for discussing other grounds.

The relator is discharged.