## Ex Parte R. B. Arapis

No. A-6521. Decided November 20, 1957.
(306 S.W. 2d Series 884.)

*Baker & Branch,* of Houston, for relator.

MR. JUSTICE CALVERT delivered the opinion of the Court.

This is an original proceeding instituted in this court by R. B. Arapis for a writ of habeas corpus to secure his release from confinement in the Dallas County jail. Relator is held in custody pursuant to a judgment of contempt entered by the Juvenile Court of Dallas County, Texas, on April 11, 1956, with enforcement suspended, and a subsequent judgment entered on July 31, 1957, revoking the suspension of enforcement of the first judgment.

The record reflects that on April 11, 1956 relator was found to be in contempt of a former judgment of the Court ordering him to make periodic child support payments. It is admitted by relator that the April 11th judgment of contempt was entered only after due notice and hearing. The judgment assessed relato's punishment at confinement in jail for a period of 72 hours and thereafter until he had purged himself of the contempt "by the payment of the sum of $680.00 for the support of his children." The judgment then continued: "IT IS FURTHER ordered that all commitments, writs, attachments and other process necessary for the enforcement of this order be issued. Enforcement of this order suspended for 30 days on condition the defendant maintains current payments of $20.00 per week and before the expiration of 30 days pays the amount of $200.00, and beginning May 19, 1956, adds $5.00 to the regular current payments."

On July 31, 1957, some sixteen and one-half months after entry of the contempt judgment described above, the court, on an ex parte hearing, entered a new judgment of contempt, identical in all material respects with the judgment of April 11, 1956, except that at the end of the language quoted in the preceding paragraph hereof the following was added: "On 7-31-57 it appearing to the court that the defendant has failed to comply with the terms of the suspension, the suspension is revoked and an attachment is ordered issued."

A writ of attachment and commitment was issued by the clerk of the court on July 31, 1957 commanding any sheriff or constable of the State of Texas, in obedience to an order of the court "made and entered on the 11th day of April, 1956," to take relator into custody and commit him to jail and there keep him until 72 hours had expired and until he had "paid the amount of $680.00 in back child support." The writ contained

the following direction: "HEREIN FAIL NOT, but due return make of this writ within fifteen days from the date hereof, showing how you have executed the same."

On August 29, 1957, a period of fourteen days after the return date in the writ, the sheriff of Harris County, Texas, took relator into custody and committed him to jail. He was subsequently removed to the Dallas County jail from which he was released on bond on September 4, 1957 in compliance with an order of this court.

The first question to be decided is whether the writ of attachment and commitment became *functus officio* after its return date, and whether the attempt to execute it after such time was without legal authority.

■ We have discovered no Texas authorities on this precise question. Most of the cases in this state dealing with the question in any way are cases in which it is held that writs of citation and writs of execution become *functus officio* after their return date and are thereafter wholly without legal force or effect. Towns v. Harris, 13 Texas 507, 513; Hester v. Duprey, 46 Texas 625; Lemothe v. Cimbalista by Gates, Texas Civ. App., 236 S.W. 2d 681, error refused; Reynolds v. Farmers & Merchants Nat. Bank of Nocona, Texas Civ. App., 135 S.W. 2d 556, no writ history; Blanton Banking Co. v. Taliaferro, Texas Civ. App., 262 S.W. 196, no writ history. In the case last cited it is said: " 'Functus officio' is a term applied to a writ or process that once had life, but has expired by its own terms, or has become exhausted by reason of having accomplished the purpose of its issuance." Relator argues that a writ of attachment and commitment in contempt should not be in a different class. We are inclined to agree. No authority to the contrary has been found and consistent with this view is 6 C.J.S., where at page 682, it is said concerning warrants of arrest:

"After the term to which process is returnable, it is functus officio where no alias has been issued, and defendant's arrest thereunder is unauthorized."

The only case cited by Corpusu Juris Secumdum for the quoted statement (and we have found no other) is the South Carolina case of Butler v. Corbitt, 33 S.C.L. 1, II Strobhart's Law Reports 1. In that case process for the defendant's arrest was, on its face, made returnable at the next term of court. The

process was executed by arrest of the defendant after the return date. The court held the writ to be *functus officio* and set the service aside.

■ A "commitment" is a warrant, order or process by which a court or magistrate directs a ministerial officer to take a person to jail or to prison and to detain him there. 7A Words and Phrases 577, et seq. It is the written authority under which the officer acts. "There is no particular form prescribed by law for a commitment." Ex Parte Palmateer, 150 Texas 510, 243 S.W. 2d 160, 161. It may consist of an authenticated copy of the court's judgment which itself directs that a person be placed in jail and be there detained, Ex Parte Coward, 110 Texas 587, 222 S.W. 531, or it may take the form of a separate written order, signed by the judge or magistrate, or of a written order issued and signed by the clerk of the court by direction of the court.

■ In this case no authenticated copy of the court's judgment was placed in the hands of the sheriff, and neither was he furnished an order signed by the judge directing that relator be placed in jail and there detained for 72 hours and until he had paid $680.00. The only written authority for the attachment or detention of the relator was the written order signed and issued by the clerk at the direction of the court. When the time for making return of that written order expired it became *functus officio* and all authority conferred by it terminated. It was as though it had never issued. An arrest without a written commitment made for the purpose of enforcing a contempt judgment is an illegal restraint from which the prisoner is entitled to be relieved. Ex Parte Palmateer, supra; Ex Parte Smart, 152 Texas 229, 256 S.W. 2d 398.

■ In his second point, relator argues that he was denied due process of law in that he was not given notice, in any form, of the hearing held on July 31, 1957, and therefore was denied an opportunity to appear and present his defense of inability to comply with the conditions of the suspension order. The answer to that argument is that he was not committed for failure to comply with the suspension order. He was committed under the judgment of April 11, 1956 for a contempt theretofore committed. Before that judgment was entered he was given a hearing at which he could have presented (and for aught we know, may have presented) evidence that his failure to comply with the support judgment was because of inability to do so. The record of that hearing is not before us. Upon conclusion of the

hearing the court found relator in contempt and ordered him committed to jail for 72 hours and until he should purge himself by paying the sum of $680.00 for the support of his children.

The judgment of April 11, 1956 was never suspended; only its execution or enforcement was suspended. Relator does not attack the validity of the judgment of April 11, 1956 on the ground that the evidence then heard showed conclusively his inability to make the support payments theretofore ordered or the impossibility of his purging himself of his contumacy according to its terms. And even if he did, we could not review the validity of the judgment without the record of the trial or hearing. We could not presume that the court entered a judgment of contempt wihch had no support in the evidence. Neither could we presume that the condition fixed by the court for purging the contumacy (the payment of $680.00) was impossible of performance.

In entering the judgment of April 11th the trial judge may have had in mind that he would permit relator to purge himself by complying with the conditions of the suspension order, but that it is not the judgment entered. We are not confronted, therefore, with the question of whether relator would have been entitled to a hearing, before commitment, for failure to comply with a judgment which stipulated future periodic payments as the condition or method of purging a present contempt. If in entering the judgment of April 11th the court, in a spirit of forbearance, had simply suspended its enforcement until further order of the court due process would not have required a new hearing if the court had later ordered enforcement, for whatever reason seemed to the court sufficient. The suspension order before us differs only in that specific conditions of suspension of enforcement were stipulated.

In his third point relator argues that the judgment of contempt and the writ of commitment are void because neither contains a recital that he was able to make the required support payments. We have held the writ of commitment *functus officio* and whether it was void is no longer important, but if the judgment is void no other writ can issue for its enforcement.

■ Relator's position finds support in the Texas cases of Ex Parte Robertson, Court of Appeals, 11 S.W. 668, 671 and Goodfellow v. State, 53 Texas Crim. Rep. 471, 110 S.W. 755, as well as in cases decided in other jurisdictions. See Myers v. Superior

Court, etc., 46 Cal. App. 206, 189 Pac. 109; Ex Parte Cardella, 47 Cal. App., 2d 329, 117 Pac. 2d 908; State ex rel. Trezevant v. McLeod, 126 Fla. 229, 170 So. 735. An opposite view was taken by the Supreme Court of Colorado in In re Popejoy, 26 Colo. 32, 55 Pac. 1083, 1085. We choose not to follow the Robertson and Goodfellow cases. When a court has jurisdiction of the person and the subject matter in a contempt proceeding and accords the person charged a legal hearing a judgment of contempt can be attacked only collaterally by writ of habeas corpus. It will be presumed, on review, that the court found ability to perform its former order or judgment else it would not have entered the judgment of contempt, and to be discharged the relator must produce a record of the hearing showing conclusively his inability to perform. Ex Parte Helms, 152 Texas 480, 259 S.W. 2d 184; Ex Parte White, 154 Texas 126, 274 S.W. 2d 542; Ex Parte Kollenborn, 154 Texas 223, 276 S.W. 2d 251. Any requirement of a recitation in the judgment of ability to perform would be purely technical and its absence could in no conceivable way affect the contemner's substantial rights.

Relator is ordered discharged.

Opinion delivered November 20, 1957.

Associate Justices Culver and Smith do not agree that the writ of commitment is *functus officio* or that the arrest of the relator is unauthorized.