**Ex parte Eduardo H. LAZARO, Relator.**

**No. 15087.**

Court of Civil Appeals of Texas,
San Antonio.

May 17, 1972.

Rehearing Denied June 21, 1972.

Herrera, Rocha & Segura, Luis M. Segura, San Antonio, for appellant.

Garcia, Hernandez & Campos, San Antonio, for appellee.

BARROW, Chief Justice.

This is an original habeas corpus proceeding brought pursuant to Article 1824a, Vernon's Annotated Civil Statutes (Supp. 1972), in which relator, Eduardo H. Lazaro, seeks release from the custody of the Sheriff of Bexar County, Texas. He has been released on bond pending determination of this proceeding.

The record before us consists of a transcript of certain pleadings and orders filed in Cause No. F–214,215, styled Rachel L. Lazaro v. Eduardo H. Lazaro, in the 37th District Court of Bexar County, Texas, as well as an agreed statement of facts setting forth a narrative summary of the evidence heard on March 3, 1972, at which time relator was found in contempt. By order signed on March 3, 1972, relator was found in contempt and it was ordered that relator " . . . be taken and incarcerated in the Bexar County Jail for a period of time of thirty (30) days and he is to be further incarcerated until he purges himself of this contempt by payment to Plaintiff, RACHEL L. LAZARO, the sum of FIVE HUNDRED ($500.00) DOLLARS for which he has been found to be in arrears in child support payments and in contempt and in violation of the child support orders of this Court."

This order in contempt consists of two parts. Relator is ordered to be incarcerated in the Bexar County Jail for a period of thirty days for failure to comply with the child support provision of the divorce decree entered in Case No. F–214,215 and is further ordered to be incarcerated until he purges himself of this contempt by payment of the arrears to his former wife. Relator urges that the contempt order is void for three reasons: First, the child support provision contained in the divorce

decree of February 25, 1970, is unenforceable due to its uncertainty and ambiguity. Second, the child support provision requires action by a third party, to-wit, the Social Security Administration, which party is beyond control of relator. Third, he urges that he is illegally confined without an order of commitment. Relator urges, in any event, that the coercive imposition is void because it requires him to do an act beyond his ability to perform.

Relator and Rachel L. Lazaro were divorced on February 25, 1970. The decree provides that one child, a boy four years of age, was born of this marriage and that his custody, care and control be awarded to Rachel L. Lazaro. Relator was ordered " . . . to contribute as child support through the Child Support Office, 302 W. Nueva Street, San Antonio, Texas, the sum of SIXTY ($60.00) DOLLARS per month, however, said contribution on the part of said Defendant shall be reduced proportionately to that Social Security award and benefit which may be payable to the said child if the said award is less than SIXTY ($60.00) DOLLARS per month, however, if the said Social Security award and benefit payable to the said child is in excess of SIXTY ($60.00) DOLLARS per month, then that sum in excess of SIXTY ($60.00) DOLLARS per month shall be considered as the Child Support payment ordered to be made by this Court and said payments are to commence on the 13th day of March, 1970, and a like payment on the 13th day of each succeeding month thereafter."

Rachel L. Lazaro testified that relator has never voluntarily made said payments, and the record substantiates her testimony in that in the two years since the above decree was entered, relator has been twice found in contempt of said order. The uncontradicted testimony is that he is now $500.00 in arrears. In support of his conduct relator testified that he is an unemployed paraplegic and that his only means of income are Social Security benefits of approximately $155.00 per month. The

record further shows that Rachel L. Lazaro has received from the Social Security Administration payments for said child of $10.20 per month until December, 1970, and thereafter the sum of $18.20 per month.

The first question presented is whether said child support provision is erroneous and unenforceable due to its uncertainty and ambiguity. In Ex parte Slavin, 412 S.W.2d 43 (Tex.1967), it was recognized that for a person to be held in contempt for disobeying a court decree, the decree must spell out the details of compliance in clear, specific and unambiguous terms so that such person will readily know exactly what duties or obligations are imposed on him.

The trial court specifically ordered relator to pay $60.00 per month for child support. The court recognized, however, that so long as relator was disabled, the minor child would be eligible to receive Social Security benefits and sought to give relator credit for such payments. Obviously, this provision is not artfully drawn, and the use of the word "proportionately" is meaningless. Nevertheless, the provision is clear that so long as the Social Security benefits payable to said child remain under $60.00 per month, relator's monthly obligation of $60.00 is reduced by the amount payable to the child under Social Security. Under the record before us, the benefits payable to said child have remained under said $60.00 obligation, and, therefore, relator was obligated to pay said difference as child support. Relator's obligation under the child support provision is not void for uncertainty.

Relator urges that, in any event, he cannot control the actions of the Social Security Administration and therefore compliance with the decree is beyond his control. This fact is recognized by the child support provision. Relator is ordered to pay $60.00 per month child support. This is his child support obligation. However, he is to be given credit on said obligation for the benefits, if any, payable to said child by the Social Security Administration. His obligation is not dependent on action by such agency, but rather is eased by any action taken by that body.

Relator also complains that he is being illegally restrained and confined without an Order of Confinement. The record before us contains an "Order in Contempt" whereby relator was found in contempt and ordered taken and incarcerated in the Bexar County Jail. The order further provides: "An order of commitment is therefore to issue to the Sheriff of Bexar County to take the person of Defendant, EDUARDO H. LAZARO, to be incarcerated as per orders of this Court above recited." No order of commitment is in the record, and there is a certificate from the District Clerk that there is none on file in his office.

It is settled law that a written order of commitment, which is a warrant, order or process by which a court or magistrate directs a ministerial officer to take a person to jail or to prison and to detain him there is an essential prerequisite to the imprisonment of a person for contempt. Ex parte Hardin, 161 Tex. 567, 344 S.W.2d 152 (1961); Ex parte Martinez, 160 Tex. 328, 331 S.W.2d 209 (1960). However, there is no particular form prescribed by law for a commitment. Ex parte Palmateer, 150 Tex. 510, 243 S.W.2d 160 (1951). This was fully considered in Ex parte Arapis, 157 Tex. 627, 306 S.W.2d 884, 886 (1957), wherein it was said: "It may consist of an authenticated copy of the court's judgment which itself directs that a person be placed in jail and be there detained, Ex parte Coward, 110 Tex. 587, 222 S.W. 531, or it may take the form of a separate written order, signed by the judge or magistrate, or of a written order issued and signed by the clerk of the court by direction of the court."

Relator has filed with us a certificate from the Bexar County Sheriff which provides that relator is confined in the

Bexar County Jail ". . . on Order of Contempt No. F–214,215, as per attached copy of Order." Attached is a photostat copy of an Order in Contempt, including the signature of the trial judge. Such order, signed by the judge, which directs that relator be placed in jail and there detained, was sufficient authority for the Bexar County Sheriff to confine relator. Ex parte Arapis, supra.

A more difficult question is presented by the coercive imposition of the contempt order. A trial court has the recognized power to confine a party for contempt until he obeys the order for which he has been held in contempt for disobeying. Ex parte Proctor, 398 S.W.2d 917 (Tex.1966). Nevertheless, the confined party must be able to perform the order of the court, for if his inability is conclusively shown, the trial court has no power to order the coercive imprisonment. Ex parte Rohleder, 424 S.W.2d 891 (Tex.1967); Ex parte Gonzales, 414 S.W.2d 656 (Tex. 1967); Ex parte De Wees, 146 Tex. 564, 210 S.W.2d 145 (1948).

Here, the uncontradicted evidence is that relator is a paraplegic, that he is unemployed, and is unable to obtain employment. He is living on Social Security payments of $155.00 per month. Obviously, he is unable to pay the arrears of $500.-00. This presents a difficult problem for the custodian of the minor child in that she is forced to proceed quickly against relator in the event of relator's refusal to timely make said child support payments before the arrears get beyond relator's ability to pay. Nevertheless, the record before us shows conclusively that relator is unable to comply with the court's order to pay the arrears. We therefore order this part of the court's Order in Contempt stricken.

Relator is remanded to the custody of the Sheriff of Bexar County, Texas, and it is ordered that he be incarcerated in the Bexar County Jail for the remainder of the thirty (30) days pursuant to the Order in Contempt of March 3, 1972. Upon completion of said period, relator is ordered discharged.

CADENA, Justice.

I believe that relator should be released from custody.

I cannot join in the conclusion that the child support provision of the divorce decree is ". . . clear that so long as the Social Security benefits payable to said child remain under $60.00 per month, relator's monthly obligation of $60.00 is reduced by the amount payable to the child under Social Security." If that conclusion correctly expresses the intention of the trial court, it is an understatement to say that the provision is not artfully drawn. It is difficult to imagine a less artful manner of expressing such intention.

In order to reach such a conclusion, it is necessary to do more than observe that ". . . the use of the word 'proportionately' is meaningless." Even if we delete the word "proportionately" it is impossible to determine the meaning of the decree, since the excision of that term would leave us with the following provision: ". . . however, said contribution on the part of said Defendant shall be reduced . . . to that Social Security award and benefit which may be payable to the said child if the said award is less than SIXTY ($60.-00) DOLLARS per month, . . . ." This certainly cannot be interpreted as providing that relator's obligation shall be reduced by the amount of the Social Security award. The plain meaning of the language is that relator's contribution shall be reduced "to" the Social Security award. A direction to reduce amount X to amount Y is not an instruction to subtract amount Y from amount X. We have now altered this clear expression of intent by eliminating "proportionately" and substituting "by" for "to." But our work of rewriting is not yet done. It is still necessary that we substitute the verb "paid" for the adjective "payable." An "award and benefit which may be payable" is not the same as "an award

and benefit which is paid." An amount paid may be more or less than the amount payable, and once an amount is paid it is no longer payable. If we do not substitute "paid" for "payable," the provision refers to the award to which may be *due* the child under the provisions of the Social Security Law, rather than to the award which is actually paid. Thus, the provision to the effect that relator's obligation " . . . shall be reduced proportionately to the . . . award . . . payable . . . ." becomes clear only if the operative words are changed to " . . . shall be reduced by the . . . award . . . paid . . . . " We now have a provision which can be described as clear, but this clear provision is not the provision which the trial court wrote.

It is not necessary, in this case, to attempt to make sense out of the language seeking to describe relator's duty if the award should exceed $60.00 per month. But it is clear that such provision is even more confusing than that portion of the decree which this Court has rewritten.

I would also hold that relator is being illegally restrained without a proper order of confinement. If it is settled law that an order directing a ministerial officer to incarcerate a contemnor is an essential prerequisite to imprisonment for contempt, then that essential prerequisite is lacking here. The order adjudging relator in contempt does not direct any ministerial officer to incarcerate relator. We do not have before us an order such as that issued in Ex parte Coward, 110 Tex. 587, 222 S.W. 531 (1920), which expressly provided that a certified copy of such order should be delivered to the sheriff " . . . commanding him to arrest the said R. A. Coward and place him in said county jail . . . and for so doing this shall be sufficient warrant and authority to said sheriff." See Ex parte Palmateer, 150 Tex. 510, 243 S.W.2d 160, 161 (1951), for an explanation by the Supreme Court of the Coward decision.

In any event there is here no showing that, as in *Coward,* a certified copy of the order adjudging relator in contempt was ever delivered to the sheriff. In fact there is no showing that anything was ever delivered to the sheriff. The certificate of the sheriff merely recites that relator is confined in jail " . . . on Order in Contempt No. F–214,215, as per attached copy of Order." This certainly falls far short of constituting evidence that a copy, authenticated or not, of the order was ever placed in the hands of the sheriff. Nor can it be construed as a certification to the effect that any order was delivered to the sheriff. There is, therefore, no showing that an essential prerequisite for imprisonment for contempt has been met.