**Ex Parte Joe B. COLLEY, Relator.**

**No. 13473.**

Court of Civil Appeals of Texas, Austin.

July 8, 1981.

**650**

Joel B. Mitchell, Austin, for appellant.

Lawrence J. Morgan, Campbell & Davidson, Austin, for appellee.

PHILLIPS, Chief Justice.

This is a petition for Habeas Corpus brought as an original proceeding in this Court pursuant to Tex.Rev.Civ.Stat.Ann. art. 1824a (Supp. 1980–81). This Court released Relator on bond pending our determination of the case.

Joe Colley, relator, was divorced from Rita Colley on January 11, 1979. At that time, the trial court orally ordered child support payments to begin on January 20, 1979. A written decree was not signed by the judge until April 12, 1979. Rita Colley filed a motion for contempt for failure to pay child support and to reduce child support arrearages to judgment on January 29, 1981. A hearing was held on April 1, 1981. The relator was found to be $3000 in arrears on child support payments, was found to be in contempt and was ordered confined in the county jail of Travis County for thirty days. This order was signed on April 6, 1981.

Relator apparently claims that the divorce decree did not order him to pay child support until April 20, 1979. The first reason given by relator for this proposition is that he cannot be ordered to pay child support payments until a written order is signed. In this he misapplies *Ex parte Mikeska*, 608 S.W.2d 290 (Tex.Civ.App. 1980, no writ). In *Mikeska*, contempt proceedings were begun one week after the court order for child support was signed. The court held the oral announcement of the divorce decree was not sufficient to support a contempt commitment. The divorce decree in this case was announced on January 11, 1979, and signed on April 12, 1979. In August, 1979, after the divorce decree was signed, relator paid $800 to the Domestic Relations Office which in turn paid the money to Rita Colley. That payment erased the arrearage that had accrued under the oral order. The current arrearage in child support payments has accrued subsequent to the signing of the divorce decree. Therefore, relator's claim that he is not obligated to pay child support payments that are orally ordered is inapplicable to this case.

Relator's second reason for claiming that he was not ordered to pay child support until April 20, 1979, is that the divorce decree is ambiguous. The pertinent part of the decree states:

"IT IS FURTHER DECREED that JOE B. COLLEY pay to RITA COLLEY child support in the amount of Three Hundred Dollars ($300.00) per month, with the first payment being due and payable on or before the 20th day of January, 1979, and a like payment being due and payable on or before the same day of each month thereafter until the child reaches the age of eighteen (18) or is otherwise emancipated."

"Notwithstanding the above however, it is understood and agreed that the Respondent will be allowed to pay only One Hundred Dollars ($100.00) per month for the first twelve (12) months immediately ensuing this decree and Two Hundred Dollars ($200.00) per month for the second twelve (12) months, with the defi-

ciency accumulating and to be erased by payments of Four Hundred Dollars ($400.00) per month beginning with the January, 1981 payment, such increased payment to be made until the deficiency is erased; provided further, that the deficiency shall be erased in the event that Respondent sells any real estate owned by Respondent, including, but not limited to, the Goodrich Street property hereinafter described."

*Ex parte Slavin*, 412 S.W.2d 43 (Tex.1967), set the standard for review of contempt orders based upon court orders that are claimed to be ambiguous. The Supreme Court stated:

"It is an accepted rule of law that for a person to be held in contempt for disobeying a court decree, the decree must spell out the details of compliance in clear, specific and unambiguous terms so that such a person will readily know exactly what duties or obligations are imposed upon him." *Id.*, at 44.

The decree states that relator pay Rita Colley $300.00 per month for child support payments. The first payment was due on or before January 20, 1979. The decree then allows reduced payments for two periods of twelve months each. Then, "beginning with the *January*, 1981 payment" the payments would be $400.00 per month until the deficit is made up. Twenty-four months after January, 1979, is January, 1981. The first $100.00 payment was due on January 20, 1979. Twelve months later, on January 20, 1980, the payments were increased to $200.00 per month. Twelve months after that, on January 20, 1981, the payments were increased to $400.00 per month. When the entire decree is read instead of one small portion, it can be seen that the decree clearly ordered that the reduced payments were to begin on January 20, 1979. The decree is not ambiguous and the trial court did not err in finding that relator was $3000 in arrears.

It should be noted that when relator made the $800.00 payment in August, 1979, it was for the eight monthly payments ($100 per month) that he had missed from January 20, 1979, to August 20, 1979, inclusive. Relator is apparently attempting to take the position that the decree is ambiguous even though he had followed the terms of the decree that he claims to be ambiguous.

Relator also complains that he was denied due process when the trial court failed to grant a motion for continuance. Relator alleged that he reached an agreement with Rita Colley and that he understood that he would not need an attorney. He claims that when he discovered that there was no agreement, it was too late to contact his own attorney so he could be represented at the contempt hearing.

It is a denial of due process to deny a motion for continuance when a person, *through no fault of his own*, was unable to obtain representation by an attorney. *Ex parte Hiester*, 572 S.W.2d 300 (Tex.1978); *Van Sickle v. Stroud*, 467 S.W.2d 509 (Tex.Civ.App.1971, no writ). Relator knew that a contempt hearing was scheduled to be held on April 1, 1981. He did not ask his attorney to appear. Rita Colley denies that she made any agreement with relator that she would consider the child support payments paid as relator claims. If such an agreement had been made, it would be void and could not be used as a defense to a motion for contempt. *In re McLemore*, 515 S.W.2d 356 (Tex.Civ.App.1974, no writ). Relator has failed to show that he was without fault in failing to have an attorney present or that he exercised diligence in obtaining an attorney.

Relator then complains that he was called to the stand as a witness against himself. This claim is without merit. After the presentation of Rita Colley's evidence, the following conversation occurred:

"THE COURT: Mr. Colley, your wife has rested her case. You have an opportunity, now, to come forward and call any witness that you choose to concerning this matter, or if you choose to take the stand and testify, you may do so at this time.

MR. COLLEY: No, sir.

THE COURT: In that event, you are not going to explain to the Court any reason why you haven't paid your child support?

MR. COLLEY: Yes, Sir. I can do that, if that would please the court.

THE COURT: Come on up here and be sworn by this clerk and come on around there and let me hear about it."

A defendant may not be forced to testify in a hearing on a petition for criminal or civil contempt. See *Ex parte Werblud*, 536 S.W.2d 542 (Tex.1976), *Ex parte Roper*, 592 S.W.2d 433 (Tex.Civ.App.1979, no writ), and *Ex parte Harris*, 581 S.W.2d 545 (Tex.Civ.App.1979, no writ). In this case, the trial court merely informed relator that he could call witnesses or take the stand himself. There was no coercion involved. Relator's privilege against self-incrimination was not violated.

All other points of error are overruled.

Relator is remanded to the custody of the Sheriff of Travis County for the remainder of the thirty-day confinement ordered by the trial court.