TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00287-CV







Ex Parte: Janie Wilkerson, Relator







HABEAS CORPUS PROCEEDING FROM HAYS COUNTY







PER CURIAM



 Relator Janie Wilkerson filed her petition for writ of habeas corpus seeking
discharge from the custody of the Hays County sheriff. See Tex. Gov't Code Ann. § 22.221(d)
(West Supp. 1995); Tex. R. App. P. 120. Relator asserts that the order of contempt is void
because there is no evidence to support the order, she did not have adequate notice of the duties
required of her, and the writ of commitment was defective. Because we conclude that the
evidence is insufficient and the order ambiguous, we will order Relator discharged from custody.

 Relator and real party in interest Wallace Wilkerson ("Wilkerson") were divorced
in August 1992. In the final decree of divorce signed the following September, Relator was
named sole managing conservator and Wilkerson possessory conservator of their child, Aaron. 
In February 1994, the district court modified the original decree to provide:



 IT IS ORDERED that the Movant, WALLACE WILKERSON, shall
have possession of . . . AARON J. WILKERSON, each and every Friday . . . . 
JANIE WILKERSON shall surrender AARON J. WILKERSON to WALLACE
WILKERSON upon the child's dismissal from school at the school in which the
child is enrolled. Each period of possession shall end at 8:00 p.m. on that same
Friday.


 IT IS FURTHER ORDERED that JANIE WILKERSON and . . .
AARON J. WILKERSON shall attend bi-weekly counseling sessions with Dr.
Robert Herndon . . . .



("the February order").

 In April 1995, Wilkerson filed his first amended motion for enforcement asserting
that Relator failed to comply with the visitation provisions from September 9, 1994, through April
21, 1995; failed to comply with the counseling provisions; and failed to pay attorney's fees as
ordered. See Tex. Fam. Code Ann. §§ 14.31, .312 (West Supp. 1995). (1) In its order of May 12,
1995, the district court found Relator in contempt for her failure to comply with the visitation
provisions and failure to attend counseling. Relator was ordered confined in the Hays County jail
for a period of ninety days for each violation, each period to run concurrently.

 A petition for writ of habeas corpus is a collateral attack on the trial court's order
of contempt. Relator has the burden to demonstrate that the order is void, not merely erroneous. 
Ex parte Christensen, 868 S.W.2d 376, 378 (Tex. App.--Houston [1st Dist.] 1993, orig.
proceeding). She may show that the order is void either because it was beyond the power of the
court to issue such an order or because the order deprived her of her liberty without due process
of law. Ex parte Barnett, 600 S.W.2d 252, 254 (Tex. 1980); Ex parte Stephens, 734 S.W.2d
761, 762 (Tex. App.--Fort Worth 1987, orig. proceeding). The order here is criminal in nature
because the sentence is fixed and definite and Relator cannot avoid punishment by voluntary
compliance. Ex parte Werblud, 536 S.W.2d 542, 545-46 (Tex. 1976); Ex parte Johns, 807
S.W.2d 768, 771 (Tex. App.--Dallas 1991, orig. proceeding). A criminal contempt conviction
requires proof beyond a reasonable doubt of: (1) a reasonably specific order, (2) a violation of
the order, and (3) a willful intent to violate the order. Ex parte Chambers, 38 Tex. Sup. Ct. J.
448, 449 (Mar. 30, 1995). In reviewing the record, this Court does not determine whether the
proof preponderates for or against Relator; rather, we determine whether the contempt order is
void because Relator was deprived of her liberty without due process of law. Id.; Ex parte
Rosser, No. 14-95-00185-CV, slip op. 4 (Tex. App.--Houston [14th Dist.] May 11, 1995, orig.
proceeding).

 Relator first contends that the order is void because no evidence was offered to
show that she failed to permit visitation after school on Fridays. (2) Relator and Aaron live in Travis
County, Wilkerson lives in Comal County, and Aaron attends school in Hays County. At the
hearing on the motion for enforcement, Wilkerson testified that he has appeared at Aaron's school
to pick him up and has not "yet been able to pick him up at school after school. It is either I
haven't been able to find him, haven't seen him, or his sister picked him up and takes him away." 
Wilkerson testified further that on occasion he has gone into the school to look for Aaron but
could not find him, even with the principal's assistance. One Friday, when Aaron came out of
the school, his sister Sherrie was sitting in her car and she drove her car over to the school
entrance where Aaron jumped into waiting car, defeating Wilkerson's attempt to pick up his son. 
Wilkerson did not know whether Relator and Sherrie kept Aaron isolated or whether Aaron did
not want to see his father.

 Wilkerson's mother also testified that, one Friday, she and her daughter saw Aaron
leave the school with Sherrie. Sherrie testified that Aaron knows he has to visit his father but is
frightened of him. She testified further that Wilkerson has "exhibited violence against" Relator,
Aaron, and her. Wilkerson testified that he has never struck or choked Relator, Sherrie, or
Aaron. Relator did not testify.

 The question presented is whether Relator failed to surrender Aaron at the end of
the school day and, in doing so, violated the visitation provisions. "Surrender" means "to yield
to the power, control, authority, or possession of another." Webster's Third New International
Dictionary 2301 (Philip B. Grove ed., 1988). The use of the term is unclear in describing
Relator's duties and obligations. Presumably, Relator had no need to be at the school if
Wilkerson were to meet Aaron. We understand the order to mean that Relator is to have Aaron
at school each Friday and to yield her possession and control over him to Wilkerson between the
end of school and 8:00 p.m. each Friday. See Hopkins v. Hopkins, 853 S.W.2d 134, 137 (Tex.
App.--Corpus Christi 1993, no writ) (person with rights of possession may exercise possession and
control of child, to the exclusion of all others, during period of possession).

 Wilkerson argues that Aaron's "unavailability" evidences Relator's noncompliance. 
However, the evidence adduced at the hearing shows only that Wilkerson was unable to exercise
his period of possession because Aaron did not choose to go with Wilkerson. At oral argument,
Wilkerson's counsel stated that Aaron's whereabouts on Friday afternoons is a fact they could not
prove. Accordingly, we must conclude that the evidence does not support a finding that Relator
violated the visitation provision of the February order. Accordingly, we do not reach the question
of Relator's responsibility if Wilkerson's visitation was due to his son's unwillingness to go with
his father. See Ex parte Morgan, 886 S.W.2d 829, 832 (Tex. App--Amarillo 1994, orig.
proceeding) (in dicta, court concluded that mother did not violate order when children were ready
for visitation with father but refused to go with him).

 The trial court also held Relator in contempt for violation of the provision for
counseling. To support an order of contempt, the underlying order must set forth the terms of
compliance in clear, specific, and unambiguous terms so that the person charged with obeying the
decree knows what duties and obligations are imposed on her. Chambers, 38 Tex. Sup. Ct. J.
at 449; Ex parte Slavin, 412 S.W.2d 43, 44 (Tex. 1967); Ex parte Russell, 875 S.W.2d 467, 469
(Tex. App.--Austin 1994, orig. proceeding). An order is insufficient to support a contempt order
if its interpretation requires inferences or conclusions about which reasonable persons might
differ. Chambers, 38 Tex. Sup. Ct. J. at 449; Ex parte MacCallum, 807 S.W.2d 729, 730 (Tex.
1991).

 The February order provides only that Relator and Aaron were to attend bi-weekly
counseling sessions with Robert Herndon, a counselor in San Marcos. (3) This provision is open
to several interpretations because it does not specify when counseling was to begin or to end. The
provision leaves the timing of the counseling open to speculation; therefore, the order is not
sufficiently clear and unambiguous to be enforceable by contempt. See Ex parte Brister, 801
S.W.2d 833, 834 (Tex. 1990) (order that mother surrender child at beginning of periods of
visitation to be designated by father according to his work schedule not sufficiently specific); see
also Rovner v. Rovner, 778 S.W.2d 905, 909 (Tex. App.--Dallas 1989, writ denied) (agreed
judgment that did not spell out details of compliance gave rise to many questions not answered
in judgment and was not enforceable by contempt).

 Because the evidence does not show that Relator violated the visitation provision
of the February order and because that order's provision for counseling is ambiguous, the order
of contempt is void. We need not address Relator's argument that the writ of commitment was
defective.

 In concluding that the order of contempt is void, this Court does not condone or
excuse Relator's conduct as alluded to in the statement of facts before us. An important policy
inherent within the Family Code is Wilkerson's right to visit with and to know his son. Clearly,
and with good cause, the trial court is frustrated with Relator's failure to facilitate the visitation
and counseling ordered by the court:



THE COURT: . . . [Relator] agrees to everything and then does nothing. She
agrees, and she will tell you in the courtroom she will do something, and then
when she is found in contempt, she has refused and completely done the opposite.


[RELATOR'S COUNSEL]: That is the problem.



Wilkerson is entitled to visit with his son; all family members would be well served by the
counseling recommended by the court. The court has held Relator in contempt on at least one
other occasion. If the issues here are to be resolved, more cooperation is required from all
parties. For their part, counsel must insure that all agreements and orders unambiguously spell
out each party's duties and obligations so that neither is uncertain of his or her responsibilities.

 Because the order of contempt is void, we order Relator discharged from the
custody of the sheriff of Hays County.



Before Justices Powers, Kidd and B. A. Smith

Relator Ordered Discharged

Filed: June 21, 1995

Do Not Publish
1. [1] All citations to the Family Code in this opinion are to the version of the Family Code
applicable to this proceeding, although these provisions were repealed and recodified effective
April 20, 1995. Act of Apr. 6, 1995, 74th Leg., R.S., ch. 20, § 2(1), 1995 Tex. Sess. Law Serv.
113, 282 (West). This revision does not affect proceedings pending on April 20, 1995; these
proceedings are governed by the law in effect at the time the proceeding was begun. Id. at § 3(a). 
Wilkerson filed his motion for enforcement on March 10, 1995. 
2. [2] The order of contempt includes "Christmas holidays" as one of the violations. According
to the final decree of divorce, Wilkerson was to have possession of Aaron, in 1994, "beginning
at 6:00 p.m. on the last school day before the Christmas vacation begins and ending at noon on
December 26." That decree also provides that Relator is to surrender Aaron to Wilkerson "at the
beginning of each period of [his] possession at the residence of [Relator]." (Emphasis added). 
The record does not indicate whether the 1994 Christmas holiday began on a Friday so that the
February order applied. At the contempt hearing, the trial court held Relator in contempt "for
each and every one of the violations on Friday" without mention of the Christmas holiday. 
Because Relator does not complain separately of the "Christmas holiday" violation, we presume
that the visitation began on a Friday. 
3. [3] At the hearing, Wilkerson's counsel questioned Wilkerson about an order that required
Wilkerson and Relator to attend counseling with Herndon and to pay one half of Aaron's and
Relator's fees. The February order only requires Relator and Aaron to meet with Herndon. 
Although the divorce decree ordered Wilkerson and Relator to participate in counseling,
Wilkerson sought to enforce only the February order.